JOHN S. PURVIANCE, APPELLANT, vs. CHARLES BROWARD, EX-
ECUTOR, ETC., RESPONDENT.

Under the act of Congress of March 2, 1867, entitled "An act for the more
efficient government of the rebel States," and the act of July 19, 1867,
amendatory thereof, the officer commanding the military district in
which Florida was embraced was authorized to suspend a sheriff in
the exercise of his power to sell property under execution.

Appeal from the Circuit Court of Jefferson county, Sec-
ond Judicial Circuit.

The opinion of the court contains a statement of the case.

*J. J. Finley* for Appellant.

At the time the military order was made, there existed
in Florida a government complete in all its departments—
executive, legislative and judicial—and it is contended that
the military commander had no power to interfere with the
legitimate functions of either without the clearest authority
of law; and it is submitted that no such power was con-
ferred by the act of Congress of March 2, 1867, entitled
"An act to provide for the more efficient government of
the rebel States."

Section one of said act provides for the division of said
States into military districts, making Georgia, Alabama and
Florida the third district.

Section two authorizes the President to assign to the
command of each of said districts an officer of the army.

Section three defines the duties and powers of the said
military commanders, and limits them to the protection of
"all persons in their rights of person and property; to
suppress insurrection, disorder and violence, and to punish,
or cause to be punished, all disturbers of the public peace
and criminals;" and to the end that these duties might be
performed, and these powers executed, the said military
commanders were authorized to "allow local civil tribunals

to take jurisdiction of and to try offenders, or to organize military tribunals for that purpose."

Section six provides that any civil government which may exist in said rebel States shall be deemed *provisional only*, and in all respects subject to the paramount authority of the United States at any time to abolish, modify, control, or supercede the same.

It is submitted that the act of Congress referred to does *nowhere* confer the power on a military commander to prevent the execution of the judgment or decree of a court in a civil proceeding.

Florida was, at the time of the promulgation of said military order, a provisional government, and her courts were in the full exercise of all their judicial functions—at least, so far as the supervising control of the United States was concerned; for, as it will appear from the act of Congress above referred to, the military commanders of districts were limited in their powers to matters of a criminal nature.

It is, therefore, contended that the military commander, in this case, had no lawful power to forbid, nor in any way to hinder or delay, the execution of the decree in favor of the appellant.

*Wm. Bryson* for Appellee.

It cannot be denied that the military which governed the State did have the authority to make such an order and to impose it. Then, why should it not be held valid and binding? The good and orderly people all obeyed it, and shall those who saw proper to violate it take the advantage of it? I do not think it would be just or right.

The rules adopted in modern warfare are, that the conqueror adopts and enforces the laws of the conquered country, if they have any, until they are abrogated, or sees proper to adopt others; and this country had adopted that policy long before the unhappy difficulty between the North

and the South. It is only necessary to refer to the instructions of President Polk, in his letter to the Secretary of the Treasury, on the 23d day of March, 1847, in which he declared that the conqueror possessed the right to establish a temporary military government over such seaport towns or provinces, and to prescribe the terms of commerce with such places; that he might, in his discretion, exclude trade or impose terms upon it. Kent's Com., Vol. I., p. 98, Sec. 92, note c.

It cannot be pretended this was not a conquered country. We all remember it. And the Supreme Court of the United States has repeatedly recognized this authority, and held that the military had authority to appoint judges to hold courts, and that their decisions were binding. 12 Wallace, 173. In the State courts of Tennessee it was held, in Hefferman vs. Porter, 6 Cold., 391, that a judgment of a tribunal known as the civil commissioners, created by order of the commander of the Federal forces at Memphis in April, 1863, was binding, and a bar to any other action upon the same cause of action. Mr. Justice Ellett, speaking for the court, says "the establishment of legal tribunals for the adjustment and protection of civil rights in the most favorable condition for the conquered people," etc. Then, if Tennessee was a conquered people, so were we, and we had the same kind of government, the powers of which were supreme.

It may be contended, as it was before the referee, that this is or will be a hard case. I answer that it is the appellant who caused it, and that if he has any decree or judgment that he supposes is a lien upon this land, the court will allow the elisor to amend his return, and he can again levy upon the land, when the defendant can have an opportunity, in a proper proceeding, if he has a *bona fide* title, to prevent his casting a cloud upon his title by any sale of the land.

WESTCOTT, J., delivered the opinion of the court.

This is an action of ejectment brought before the enactment of the Code, but prosecuted and decided in conformity to the practice of the Code, it having been enacted during the time the action was pending. The defendant interposed a plea of not guilty. The case was tried before a referee. Upon the trial, the plaintiff offered in evidence a deed executed on the 20th of March, A. D. 1868, from John Q. Stewart, elisor, to John S. Purviance, to the land in controversy. To the introduction of this deed the defendant objected, on the ground that the sale of this property under execution was prohibited by General Orders No. 18, issued by Maj. Gen. Meade, who was at that time commanding the Third Military District, embracing the States of Georgia, Florida and Alabama, on the 29th day of January, A. D. 1868, and that the sale was therefore void. The objection to the introduction of the deed was sustained by the referee; the deed was ruled out, and judgment was awarded in favor of the defendant and against the plaintiff. The plaintiff excepted to the ruling of the referee; his exception was noted; and this presents the only question to be considered in the case. It is not denied that the sale was had in violation of this order, nor is it denied that the sale was void if the order was authorized by the acts of Congress controlling the subject. The point here made is, that no such power was conferred by the act of Congress of March 2, 1867, entitled "An act to provide for the more efficient government of the rebel States," it being insisted that this was the origin and measure of the authority of the general commanding the military district.

The power of the commanding general was not alone derived from the act of March 2, 1867, but was also derived from the act, supplemental thereto, of the 19th July, 1867. 15 U. S. Stat., 14. This order of the commanding general prohibited any sheriff or other officer of the State from selling under execution or other legal process, in this State,

any property, real or personal, and declared that any sale so made should be null and void. The second section of the amendatory and supplemental act of July 19, 1867, provides that the commanding general shall have power, subject to the disapproval of the General of the Army of the United States, and to have effect until disapproved, whenever in the opinion of such commander the proper administration of the act of March 2, 1867, shall require it, to suspend or remove from office or from the performance of official duties, and the exercise of official powers, any officer or person holding or exercising, or professing to hold or exercise, any civil office in such district. Congress, through that act, also declares that the purpose, intent and meaning of the original act was to render governments then existing in these military districts, if continued, subject *in all respects* to the military commanders of the respective districts and to the paramount authority of Congress. The third section of the original act gives the commanding general power to protect all persons in their rights of person and property, to suppress insurrection, disorder and violence, etc. Under this legislation, it is too clear to admit of any argument that Congress did confer authority upon the commanding general to prohibit sheriffs and other officers from selling property under execution. The acts confer in plain terms the authority to suspend any officer from the exercise of official powers, and the order now under consideration directed the sheriffs and other officers not to exercise the power and duty of making sales under execution. The original and supplemental acts confer, in so far as Congress could, the most plenary authority over the entire subject upon the military commanders.

Judgment affirmed.